IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

ROBERT LEE BARNES,    )    Case No. 7:20-cv-00635
    Plaintiff,    )
    )
v.    )
    )
BENNY MULLINS, et al.,    )    By: Hon. Michael F. Urbanski
    Defendants.    )    Chief United States District Judge

## MEMORANDUM OPINION

Plaintiff Robert Lee Barnes, a Virginia inmate appearing pro se, filed this civil action pursuant to 42 U.S.C. § 1983, alleging that three medical professionals employed by Wallens Ridge State Prison ("WRSP") and Defendant Tyler Kemp, "a physician's assistant employed at Carilion Clinic Orthopedics," acted with deliberate indifference in failing to address his serious medical needs in violation of the Eighth Amendment. Compl., ECF No. 1-1 at 1–2; Suppl. Compl., ECF No. 24 at 2–3. Defendant Kemp filed a motion to dismiss Plaintiff's complaint for failure to state a claim. Kemp's Mot. to Dismiss, ECF No. 12. The motion has been fully briefed and is ripe for disposition. See ECF Nos. 13, 28, 30. For the reasons discussed below, the motion to dismiss is **GRANTED** and Barnes's deliberate indifference claim against Kemp is **DISMISSED**.[1]

## I. Background[2]

---

[1] Defendants Benny Mullins, Happy Smith, and T. Townsend have pending summary judgment motions. See ECF Nos. 35, 37. The court will address those motions at a later date.

[2] This court summarizes facts alleged in Barnes's Complaint, ECF No. 1. Barnes also filed a "Supplemental Complaint," which adds a claim against Defendant T. Townsend. See Suppl. Compl., ECF No. 24. Together, both complaints form the operative complaint in this case. Id. However, because the supplemental complaint relates to Defendant Townsend and does not mention Defendant Kemp, the court does not summarize the facts alleged therein.

Barnes is incarcerated at WRSP. Compl. at 2. In December 2018, he presented to Defendant Mullins for medical treatment. Id. at 3. He complained of back pain, muscle spasms, and muscle tightness; explained that a physical therapist diagnosed him with functional scoliosis in February 2018; and told Mullins that his existing prescriptions for meloxicam and baclofen were usually ineffective. Id. at 3–4. He alleges that Mullins extended his meloxicam prescription for 180 days but "failed to take any [other] action" to improve Barnes's condition. Id. at 4. In January 2019, Barnes presented to Defendant Smith with similar complaints. He explained that meloxicam was ineffective, that he had not been given "any medications to treat his muscle tightness and muscle spasms," and that he had tried various medications in the past (including Motrin, meloxicam, Indocin, naproxen, Flexeril, Robaxin, and baclofen). Id. at 5. Smith said he would order spinal X-Rays and an MRI, refer Barnes to a neurologist, and "try to find medications to treat [Barnes's] pain." Id.

Two days later, Barnes "underwent x-rays on his spine." Id. at 6. Mullins subsequently informed him that the results did not show scoliosis. Id. Nonetheless, Mullins "stated that he would refer [Barnes] to an orthopedist to be sure." Id. Barnes reiterated that his pain medication was ineffective and that Smith had said he would try to find an alternative medication. Id. Mullins replied that he was "aware," said he and Smith were "still searching for an appropriate medication," and asked Barnes to be "patient." Id. Next, on March 14, 2019, Barnes presented to Kemp regarding his back pain. Id. at 6. He again had spinal X-Rays, which "revealed a 'mild thoracolumbar scoliosis apex left without lateral subluxation' and indicated [Barnes's] spine curved approximately 11 degrees from his T3-T4 vertebrae." Id. Kemp also conducted a physical examination, observed lumbar tenderness to palpation, and

asked Barnes about his treatment history. Id. at 6–7. Barnes told Kemp that he had tried various medications without relief, but that he had found "significant relief" when using a foam roller and a hot towel to treat his back pain while previously incarcerated at Sussex II State Prison ("Sussex II"). Id. at 7. "In response to [Barnes's] statements, P.A. Kemp prescribed a heating pad and foam roller to treat [Barnes's] pain and muscle tightness." Id. Kemp also agreed with Barnes's physical therapist's assessment that muscle tightness caused Barnes's functional scoliosis and pain and could cause them to worsen over time. Id. He told Barnes that he "would require surgery if his spine curve[d] at a 25-degree angle" and recommended that he "try to keep his muscles relaxed by using the heating pad and foam roller." Id. at 7–8.

A month later, Barnes presented to Smith, who informed him that he could not have a heating pad and foam roller because of security concerns. Id. at 8. Smith told Barnes that Mullins would "contact PA Kemp to ask for alternative treatment options." Id. Barnes asked Smith to look into transferring him to a different correctional facility, explaining that he had gotten "significant relief" when using a hot towel and foam roller at Sussex II and that Kemp had "warned him that his scoliosis w[ould] worsen over time if his muscles continue[d] to remain tight." Id. Smith agreed to do so, observed spinal tenderness and pain, and told Barnes that he was "still looking" for an appropriate medication. Id. at 8–9. On May 1, 2019, Smith gave Barnes a prescription for Motrin. Id. Two weeks later, Barnes visited Mullins, complaining that Motrin was ineffective and "not designed to treat scoliosis." Id. at 9. Mullins nonetheless informed Barnes that "P.A. Kemp stated Motrin is an appropriate medication to treat his pain" and reiterated that Barnes "would not be prescribed a heating pad or foam

roller." Id. at 9–10. In June, Barnes again told Mullins that Motrin did not help his pain and requested a medication change. Id. at 10. Mullins declined to do so, telling Barnes that he was "getting the treatment that Mr. Kemp told [them] to give [him]." Id.

A week later, Barnes presented to Smith, asserting that he needed to transfer to a facility that would allow him to use a heating pad and foam roller. Id. Smith told Barnes "that P.A. Kemp stated [Barnes] does not need a heating pad or foam roller and that Motrin is sufficient to treat his pain." Id. at 11. Barnes disagreed, telling Smith that Motrin did not "alleviate his back pain at all" and that his pain and muscle spasms had worsened since he transferred to WRSP in November 2018. Id. Smith told Barnes that Motrin was the "right medication to treat [his] pain," but Barnes asserted that he required treatment "designed to keep his muscles relaxed, which in turn w[ould] prevent his scoliosis from worsening over time." Id. Smith told Barnes he would consult with Mullins about further treatment and about the possibility of a transfer. Id. at 12–13. He later told Barnes that he "tried to transfer" him but could not "[b]ecause Mr. Kemp said Motrin [was] the right medication" for him. Id. at 13. Barnes objected to this, asserting that Kemp "ha[d] to be incorrect because Motrin d[id] not alleviate his pain," but Smith offered no additional treatment. Id.

In September, Barnes returned to Mullins, complaining that he had pain and limited range of motion and that Motrin was not helping. Id. He asked Mullins to change his medication, but Mullins "refused" because Barnes was only taking his prescribed Motrin doses 51 percent of the time. Id. at 13–14. Barnes explained that he had stopped taking Motrin "as prescribed" because it "did not alleviate his pain." Id. at 14. A few weeks later, Mullins prescribed Naproxen and Flexeril. Id. Barnes subsequently complained that neither of those

4

medications helped, and Mullins directed him to complete both prescriptions before returning for further medical care. See id. at 15–16. In December, Barnes continued to complain of pain and muscle stiffness. Id. at 16. Mullins again prescribed Flexeril and substituted Elavil in place of Naproxen. Id. at 17. In February 2020, Barnes repeated similar complaints, and Mullins again prescribed a combination of Naproxen and Flexeril. Id. Barnes objected to this approach, explaining that it had not worked in the past, but Mullins dismissed this, stating: "Well, we're gonna try it again." Id. In March, Barnes repeated similar complaints, and Mullins made no changes to his treatment. Id. at 17–18. In April, Barnes again repeated his concerns and Mullins "stated he would prescribe Flexeril" for Barnes's pain. Id. at 18. At this suggestion, Barnes "became angry," "accused Dr. Mullins of not taking his pain seriously," and "demanded to be referred back to P.A. Kemp for further evaluation." Id. Mullins then "reviewed P.A. Kemp's original treatment recommendations," said he would ask his supervisor for permission to prescribe a foam roller, and agreed to inquire about transferring Barnes to a facility that would allow him to have a heating pad. Id. at 18–19. In May, Mullins said he would follow up with his supervisor regarding Barnes's requests, but he refused to refer Barnes for further consultation with a specialist, explaining that "a heating pad and foam roller should be sufficient" treatment. Id. at 19–20. Thereafter, Barnes filed an Informal Complaint, complaining that Mullins had failed "to diagnose and treat the cause of his functional scoliosis" and that Mullins's supervisor had failed to meet with Barnes to discuss transfer to another facility. Id. at 20.

In June, Mullins informed Barnes that he would not be transferred, explaining that Mullins did not believe that Barnes "need[ed] a heating pad or foam roller to treat his

condition." Id. Barnes accused Mullins "of retaliating against him for filing the informal complaint" and showed Mullins "a medical article" regarding functional scoliosis. Id. at 21. Mullins told Barnes that he would refer him to Smith to dismiss the article, but he failed to actually do so. Id. Later that month, Barnes presented to Mullins with continued complaints of back pain. Id. Mullins prescribed Naproxen and offered no alternative treatment options when Barnes asserted that Naproxen did not "alleviate his pain." Id. In August, Barnes repeated the same complaints to Mullins, and Mullins "failed to take any action" in response. Id. Barnes alleges that "[a]s a result of the Defendants' actions," he "experienced (and continues to experience) pain, muscle tightness, and mental distress" and is not receiving treatment for his functional scoliosis. Id. at 22.

Barnes alleges that the Defendants violated his Eighth Amendment rights by failing to address his serious medical needs and by being deliberately indifferent to them. See id. 22–24. Relevant here, he alleges that Kemp was deliberately indifferent when he (i) advised Mullins to treat Barnes with Motrin, even though Barnes had told him that Motrin was ineffective and (ii) advised Mullins to treat Barnes's functional scoliosis with Motrin "because he knows or must know Motrin is not designed to treat functional scoliosis." Id. at 24. He seeks (i) an order directing Defendants to file an Answer to his Complaint; (ii) declaratory relief declaring that the Defendants have violated the Eighth Amendment; (iii) compensatory damages in the amount of $50,000 jointly and severally from each Defendant; (iv) punitive damages in the amount of $50,000 jointly and severally from each Defendant; (v) all fees he has incurred as a result of bringing forth this action; and (vi) any additional relief the court deems just, proper, and equitable. Id. at 25–26.

In his motion to dismiss, Kemp argues that Barnes has failed to state a claim of deliberate indifference against him. See generally Kemp's Br. in Supp. of Mot. to Dismiss, ECF No. 13. First, he argues that he did not act under color of state law because he was a private medical provider who was not employed by the Virginia Department of Corrections. Id. at 4–6. Second, he argues that even if he were acting under color of state law, Barnes has not advanced any allegations showing that Kemp acted with deliberate indifference. Id. at 6–10. Specifically, he claims that he "responded reasonably to [Barnes's] medical needs of which [Kemp] was aware" by "diagnos[ing] his condition and recommend[ing] a course of treatment." Id. at 8. Kemp acknowledges that officials ultimately did not follow his recommendation to prescribe a foam roller and heating pad, id., but he argues that "[f]ailure to fulfill [Barnes's] desired medical treatment" merely reflects disagreement over the appropriate treatment method and does not rise to the level of deliberate indifference, id. at 9.

## II. Discussion

### A. Motion to Dismiss

Kemp moves for dismissal of Barnes's deliberate indifference claim against him. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to

demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, the court accepts "the well-pled allegations of the complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not accept as true "'legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement, … unwarranted inferences, unreasonable conclusions, or arguments.'" Richardson v. Shapiro, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)) (internal quotation marks omitted). Thus, a complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196–97 (4th Cir. 2009) (affirming dismissal of claim that simply stated a legal conclusion with no facts supporting the allegation); King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting Iqbal, 556 U.S. at 679)).

**B. Liability under 42 U.S.C. § 1983**

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of a right, privilege, or immunity secured by the

Constitution or laws of the United States and that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998); see also Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994). "Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under [§ 1983]." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

### 1. Acting Under Color of State Law

Kemp argues that Barnes's § 1983 claim against him should be dismissed because he is a private physician's assistant and thus did not treat Barnes while acting under color of state law. Specifically, he explains that he is a "not an employee of the Virginia Department of Corrections, and, instead, is employed by Car[i]lion Clinic Orthopedics." Kemp's Br. in Supp. of Mot. to Dismiss 5 (arguing that "[t]he Eighth Amendment imposes a duty on prison officials to provide inmates with humane conditions of confinement" (quoting Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 491 (E.D. Va. 1995)). This argument is unpersuasive.

The Fourth Circuit has held that a private physician or other medical provider acts under color of state law when he voluntarily accepts a referral to treat a prisoner, regardless of whether the physician is employed by or has any contractual relationship with the state for the provision of medical care to inmates. Conner, 42 F.3d at 223. States have a "constitutional obligation to provide adequate medical care to [their] prisoners because prisoners, due to their incarceration, cannot obtain medical care of their own." Id. at 224 (citing Estelle v. Gamble,

429 U.S. 97, 103–04 (1976)). They fulfill this obligation by either employing their own physicians or by "paying private physicians to treat [their] prisoners." Id. (citing West v. Atkins, 487 U.S. 42, 55 (1988)). And when a private physician voluntarily cooperates with the state to provide medical care to its prisoners, he "assumes the state's constitutional obligation" and thus "acts under color of state law." Id. Reading Barnes's complaint liberally,[3] Barnes alleges that prison officials referred him to Kemp for orthopedic treatment and that he met with Kemp on one occasion in March 2019. See Compl. 6 (explaining that Mullins said he would "refer [Barnes] to an orthopedist" for an evaluation of whether Barnes had scoliosis (Jan. 2019)); id. at 6–8 (explaining that Barnes subsequently visited Kemp, who assessed him for scoliosis and provided treatment recommendations (Mar. 2019)). He also alleges that Mullins and Smith communicated with Kemp regarding Barnes's treatment options after Barnes's March 2019 visit. Id. at 8–10. Although Barnes's allegations do not specify whether Kemp had a contractual relationship with WRSP or the Virginia Department of Corrections for the provision of medical services, Kemp does not contest that he voluntarily agreed to provide medical services to Barnes during his term of incarceration. See Kemp's Br. in Supp. of Mot. to Dismiss 4–6. Accordingly, the court assumes that regardless of whether Kemp had an employment agreement or other contract for the provision of inmate medical services, he treated Barnes voluntarily and "with the state's authorization." Conner, 42 F.3d at 225.

## 2. Deliberate Indifference

---

[3] Barnes is proceeding pro se. Accordingly, he is entitled to a liberal construction of his pleading. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Barnes alleges that Kemp was "deliberately indifferent to his serious medical needs." Compl. 2. "[A] prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Estelle, 429 U.S. at 104). "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth" in Farmer v. Brennan, 511 U.S. 825 (1994). Id.

Under the first prong, plaintiffs must show that the alleged deprivation was "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834. "To be 'sufficiently serious,' the deprivation must be 'extreme'–meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from … exposure to the challenged conditions.'" Scinto, 841 F.3d at 225 (quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)). In medical needs cases, plaintiffs must "demonstrate officials' deliberate indifference to a 'serious' medical need that has either 'been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). Injuries that do not require medical treatment, that "subside[ ] completely within days," or that amount to "temporary discomforts and inconveniences" do not constitute significant or serious injury as required by the Eighth Amendment. Holley v. Johnson, No. 7:08cv00628, 2010 WL 2640328, at *13 (W.D. Va. June 30, 2010).

11

Under the second "subjective" prong, "plaintiffs must show that prison officials acted with a 'sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 834). "In conditions of confinement cases, the requisite state of mind is deliberate indifference." Id. Plaintiffs must show that "the official knew of and disregarded an excessive risk to inmate health or safety," or, in other words, "that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and … drew that inference." Id. Deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Id. (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)).

Plaintiffs "can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)). "Similarly, a prison official's failure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." Id. "However, even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" Id. (quoting Farmer, 511 U.S. at 844)).

Here, Barnes alleges that he had back pain, muscle tightness, and muscle spasms. See Compl. 5. He alleges that a physical therapist "diagnosed him with functional scoliosis" in February 2018. Id. at 3. And he alleges that March 2019 spinal X-Rays ordered by Kemp "revealed 'a mild thoracolumbar scoliosis apex left without lateral subluxation' and indicated [that Barnes's] spine curved approximately 11 degrees from his T3-L4 vertebra[e]." Id. at 6.

12

He also explains that Kemp identified midline lumbar tenderness and agreed that "his muscle tightness [was] the cause of his functional scoliosis and pain." Id. at 7. Finally, Barnes alleges that his back pain and muscle stiffness persisted for years and were unresponsive to various medications. See generally id. at 3–22. The court assumes for the purposes of this order that Barnes's back pain and muscle stiffness were serious medical needs. See Barnes v. York, No. 7:21cv145, 2021 WL 1378775, at *2 (W.D. Va. Apr. 12, 2021) (assuming same in separate deliberate indifference suit brought by Barnes). Nonetheless, Barnes has not plausibly alleged that Kemp was deliberately indifferent to those needs.

Namely, Barnes has failed to plausibly allege facts showing that Kemp knew of and disregarded an excessive risk to his health and safety. Barnes claims that Kemp acted with deliberate indifference because he prescribed Motrin even though Barnes "told him Motrin [was] ineffective" for his pain and because he advised Mullins to prescribe Motrin for Barnes's functional scoliosis despite the fact that he knew or should have known that "Motrin is not designed to treat functional scoliosis." Compl. at 24. Barnes alleges that he told Kemp that Motrin and various other medications had been ineffective in the past, id. at 7, and that Kemp nonetheless advised Mullins that Motrin was "an appropriate medication to treat [Barnes's] pain," id. at 9. Barnes's disagreement with Kemp as to his treatment with Motrin does not constitute deliberate indifference. Barnes believed he needed a foam roller and heating pad to treat his functional scoliosis. Compl. 7. Kemp initially prescribed those items at Barnes's suggestion. Id. But after Mullins contacted him to request alternative treatment options because those items were prohibited, Kemp advised Mullins that Motrin was "an appropriate medication to treat [Barnes's] pain." Compl. 8–9. Barnes does not dispute that Kemp made

these decisions about what treatment Barnes required after a medical evaluation in which he ordered testing, conducted a physical examination, and discussed Barnes's complaints with him. See id. at 6–8. Such a "disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief."[4] Overman v. Wang, 801 F. App'x 109, 111 (4th Cir. 2020) (per curiam) (citing Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004)). See also Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (affirming summary judgment on deliberate indifference claim because prisoner's "dispute with Defendants' decision not to authorize the particular treatment program he requested . . . amount[ed] to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment"); Hall v. Saathoffs, No. 7:19cv813, 2020 WL 1814916, at *2 (W.D. Va. Apr. 9, 2020) (finding prisoner's lay opinion about which mental health medications he should have been prescribed, which contradicted his "doctor's medical judgment," failed to state a claim of deliberate indifference); Herrera v. Thompson, No. 7:09cv129, 2009 WL 1437846, at *2 (W.D. Va. May 21, 2009) (finding prisoner's "own assessment of his condition and its possible side effects, his statements that the doctor ha[d] provided the 'wrong' treatment, and his self-diagnosis that he need[ed] a surgical specialist [were] nothing more than disagreements

---

[4] Barnes alleges that Motrin was insufficient to treat his pain. See Compl. 9. A medical professional's failure to provide adequate treatment for a prisoner's repeated pain complaints may demonstrate deliberate indifference. See, e.g., Poling v. Foxwell, No. 18cv80, 2021 WL 82885, at *4–6 (D. Md. Jan. 11, 2021) (finding plaintiff stated a deliberate indifference claim where he alleged that prison officials knew that Lyrica and Tramadol "were effective medications to treat his debilitating pain" and consistently refused to prescribe them); Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (finding prisoner stated deliberate indifference claim where he alleged that prison physicians, who were "obligated not to persist in ineffective treatment," "never altered their response" to his hernia and associated pain, which "worsened over time"). But here, Barnes alleges that after Kemp conducted a medical evaluation of Barnes's condition, Kemp prescribed a foam roller and a heating pad. Compl. 6–9. When these items could not be provided, Kemp prescribed Motrin. Even if continued failure to provide an alternate treatment recommendation could plausibly state a deliberate indifference claim, Barnes's complaint does not provide any indication that Barnes returned to Kemp for continued treatment.

with the doctor's treatment decisions" and did not state a deliberate indifference claim). While Barnes disagrees with the medical treatment he was prescribed, considering his allegations against Kemp in the light most favorable to Barnes, Kemp's treatment of Barnes—including his prescription of a foam roller, heating pad, and, alternatively, Motrin—is not actionable as deliberate indifference to a serious medical need. As such, the claim against Kemp is dismissed.

### III. Conclusion

For the foregoing reasons, the court **GRANTS** defendant Kemp's motion to dismiss for failure to state a claim, ECF No. 12, and **DISMISSES** Barnes's deliberate indifference claim against Kemp. The clerk is **DIRECTED** to terminate Kemp as a defendant in this action.

An appropriate order will be entered.

Entered:   August 19, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.08.19 15:45:55 -04'00'

Michael F. Urbanski
Chief United States District Judge