IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ROBERT LEE BARNES,** ) | |
| Plaintiff, ) | Case No. 7:20-cv-00635 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **BENNY MULLINS, et al.,** ) | Chief United States District Judge |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Robert Lee Barnes, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to receive adequate medical care while incarcerated. The case is presently before the court on Defendant T. Townsend's motion for summary judgment.* ECF No. 35. The motion has been fully briefed and is ripe for disposition. See ECF Nos. 36, 43, and 44. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

### I.   Factual Background

The following facts are either undisputed or presented in the light most favorable to Barnes, the nonmoving party on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Defendant Townsend is a registered nurse. Decl. of Tina D. Townsend, R.N., ECF No. 36-1, at ¶ 1. She has been employed at Wallens Ridge State Prison ("WRSP") since December 10, 2008. Id. at ¶ 2. At all times relevant to this action, Townsend held the position

---

* Defendants Benny Mullins and Happy Smith have also moved for summary judgment, and Barnes has moved for summary judgment on his claims against Mullins. Those motions will be addressed separately.

of Health Authority. Id. at ¶ 3. As the Health Authority, Townsend functions as the administrator of WRSP's medical department. Id. at ¶ 4; see also Virginia Department of Corrections Operating Procedure ("OP") 701.1, Pl.'s Resp. Ex. II, ECF No. 43-1, at 1 (defining "Health Authority"). In that position, Townsend is "authorized and responsible for making decisions about the deployment of health resources and the day-to-day operations of the medical services program." OP 701.1 at 3. Her administrative responsibilities include "employment processes, leave approval, training, discipline, audits, other administrative functions, and management of employee time and time sheets." Id. Although the facility's physicians report to Townsend for administrative purposes, they "report to the Chief Physician clinically," and "[f]inal clinical judgments rest with a single, responsible physician designated as the Medical Authority." Id.; see also id. ("Clinical decisions are the sole province of the responsible health care provider and are not countermanded by non-clinicians.").

In December 2018, shortly after being transferred to WRSP, Barnes presented to Defendant Benny Mullins, M.D., for medical treatment. Compl., ECF No. 1-1, at 3. He complained of back pain, muscle spasms, and muscle tightness; explained that a physical therapist had previously diagnosed him with functional scoliosis; and informed Dr. Mullins that his existing prescriptions for meloxicam and baclofen were usually ineffective. Id. at 3–4. Rather than altering the existing course of treatment, Dr. Mullins extended Barnes's meloxicam prescription. Id. at 4.

In January 2019, Barnes presented to Defendant Happy Smith, M.D., with similar complaints. Id. He explained that meloxicam was ineffective, as were all of the other medications that he had tried in the past. Id. at 5. Dr. Smith advised Barnes that he would

order spinal x-rays, refer him to a neurologist, and "try to find medications to treat [Barnes's] pain." Id.

Two days later, Barnes underwent spinal x-rays. Id. at 6. Dr. Mullins subsequently informed Barnes that the x-ray results revealed no findings of scoliosis. Id. Nonetheless, Dr. Mullins indicated that "he would refer [Barnes] to an orthopedist to be sure." Id. Barnes reiterated that his pain medication was ineffective and that Dr. Smith had said that he would try to find an alternative medication. Id. Dr. Mullins replied that he was "aware" and that he and Dr. Smith were "still searching for an appropriate medication." Id.

On March 14, 2019, Barnes saw Defendant Tyler Kemp, P.A., for a consultative orthopedic evaluation. Id. Kemp ordered additional spinal x-rays, which "revealed a 'mild thoracolumbar scoliosis apex left without lateral subluxation' and indicated [Barnes's] spine curved approximately 11 degrees from his T3-T4 vertebra[e]." Id. Kemp also conducted a physical examination, observed lumbar tenderness to palpation, and asked Barnes about his treatment history. Id. at 6–7. Barnes told Kemp that he had tried various medications without success but previously experienced "significant relief" from using a foam roller while he was incarcerated at Sussex II State Prison. Id. at 7. Based on the information provided by Barnes, Kemp elected to prescribe a heating pad and a foam roller to treat Barnes's pain and muscle tightness. Id.

On April 17, 2019, Barnes met with Dr. Smith to discuss the results of the consultative evaluation. Id. at 8. Dr. Smith advised Barnes that he was not permitted to have a heating pad or a foam roller at his particular security level. Id. Dr. Smith told Barnes that he would contact Kemp regarding alternative treatment options. Id. Barnes emphasized that he was still

3

experiencing frequent muscle spasms and tenderness. Id. at 9. He asked to be transferred to a facility that would allow him to have a heating pad and a foam roller. Id. at 8.

On May 1, 2019, Dr. Smith prescribed Motrin for pain. Id. at 9. Two weeks later, Barnes saw Dr. Mullins for a follow-up appointment. Barnes reported that Motrin had been ineffective in alleviating his pain. Id. Dr. Mullins advised Barnes that he had spoken to Kemp and that Kemp agreed that Motrin was an appropriate treatment option. Id.

In June 2019, Barnes presented to Dr. Mullins and Dr. Smith with complaints of back pain and muscle spasms. Id. at 10–11. On both occasions, Barnes reported that Motrin had been ineffective. Id. Nonetheless, Dr. Mullins and Dr. Smith declined to change Barnes's prescription. Id. Both physicians noted that Motrin had been recommended by Kemp. Id; see also id. at 13 ("[Barnes] stated PA Kemp has to be incorrect because Motrin does not alleviate his pain. Dr. Smith replied, 'Well, I don't know. We're giving you what he told us to.'").

On September 12, 2019, Barnes returned to Dr. Mullins with complaints of pain, muscle tightness, and limited range of motion, and again reported that Motrin had been ineffective. Id. at 13. Barnes asked Dr. Mullins to change his medication, but "Dr. Mullins refused because [Barnes] was compliant with his prescription only 51% of the time." Id. at 13 –14. Barnes explained that he had stopped taking the medication as prescribed in May because it did not alleviate his pain. Id. at 14. A few weeks later, Dr. Mullins prescribed Naproxen and Flexeril. Id. Barnes subsequently complained that neither of those medications had provided relief, and Mullins advised him that he would need to finish both prescriptions before returning for further medical treatment. Id. at 15–16.

On October 29, 2019, Barnes submitted an informal complaint alleging that Dr. Mullins was refusing to refer him for further treatment until his prescriptions for Naproxen and Flexeril expired. Townsend Decl. Ex. 1, ECF No. 36-2 at 1. Townsend responded to the informal complaint on November 1, 2019. Id. She advised Barnes that "[t]he physician at the facility determines [his] plan of care." Id.

In December 2019, Barnes continued to complain of back pain and muscle tightness. Compl. at 16. Dr. Mullins prescribed Flexeril and Elavil, and advised Barnes that he would need to complete the prescriptions before seeking further treatment. Id. at 17. When Barnes saw Dr. Mullins again in February 2020, he voiced the same complaints. Id. Dr. Mullins prescribed Naproxen and Flexeril. Id.

In April 2020, Barnes returned to Dr. Mullins with the same complaints and reported that his medications were not alleviating his pain. Id. at 18. When Dr. Mullins indicated that he was going to prescribe Flexeril again, Barnes "became angry and accused Dr. Mullins of not taking his pain seriously." Id. He also "demanded to be referred back to P.A. Kemp for further evaluation." Id. Dr. Mullins then reviewed Kemp's original treatment recommendations and said that he would ask for permission to prescribe a foam roller for Barnes. Id. Dr. Mullins also agreed to inquire about the possibility of Barnes being transferred to a prison that would allow him to have a heating pad. Id. at 19.

In May 2020, Barnes asked Dr. Mullins to refer him to a specialist, but Dr. Mullins refused to do so. Id. Dr. Mullins indicated that a heating pad and a foam roller should help alleviate Barnes's pain and that he would follow up with his supervisor regarding Barnes's requests. Id. at 20. The following month, however, Dr. Mullins informed Barnes that he would

not be transferred to another prison and that Dr. Mullins did not believe that Barnes actually needed a heating pad or a foam roller to treat his condition. Id. at 20. Later that month, Barnes presented to Dr. Mullins with continued complaints of back pain. Id. at 21. Dr. Mullins advised Barnes that he would prescribe Naproxen. Id. When Barnes asserted that Naproxen did not alleviate his pain, Dr. Mullins offered no alternative treatment options. Id. He "prescribed Naproxen, and the meeting ended." Id.

In August 2020, Barnes again reported that Naproxen was not providing relief, but Dr. Barnes elected not to alter his prescription regimen. Id. 22. That same month, Barnes filed an informal complaint alleging that the medications prescribed by Dr. Barnes were ineffective in alleviating his back pain, that Dr. Barnes was ignoring his complaints, and that he intended to file a federal lawsuit. Townsend Decl. Ex. 2, ECF No. 36-2 at 2. On August 12, 2020, Townsend responded as follows: "You have been seen and treated by the facility physician and outside consults. The facility physician determines your plan of care." Id.

## II. Procedural History

On October 28, 2020, Barnes filed this action under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights. On January 5, 2021, he filed a supplemental complaint that added Townsend as a defendant. "[Barnes] alleges that Defendant Townsend is a supervisor of Defendant Mullins, that she knew Defendant Mullins was providing Plaintiff with grossly inadequate medical attention, [and] that she failed to take corrective action." Supp'l Compl., ECF No. 24, at 2.

On June 9, 2021, Townsend filed a motion for summary judgment. The motion has been fully briefed and is ripe for disposition.

### III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248–49).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

### IV. Discussion

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and citations omitted). In order for an official to be held liable under § 1983, the plaintiff must affirmatively show that the official "acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and citation omitted). "That is, the official's 'own

individual actions' must have 'violated the Constitution.'" Williamson, 912 F.3d at 171 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).

Barnes claims that Townsend and the other defendants violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016)). An Eighth Amendment violation occurs when a prison official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id. (citations omitted); see also Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) ("A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.").

A claim for deliberate indifference has two components. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209 (4th Cir. 2017). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." Id. In this case, Townsend does not challenge whether Barnes's back issues were objectively serious. Instead, Townsend argues that the record is devoid of evidence from which a reasonable jury could find that she personally acted with deliberate indifference to his serious medical needs or that she is subject to supervisory liability for the alleged actions or inactions of Dr. Mullins and Dr. Smith. For the following reasons, the court agrees.

"An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson, 775 F.3d at 178 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This standard is "exacting," and it requires more than "mere negligence or even civil recklessness." Id. (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). To rise to the level of an Eighth Amendment violation, "it is not enough that an official should have known of a risk." Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. "The subjective component therefore sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

To the extent Barnes claims that Townsend was personally involved in the alleged violation of his Eighth Amendment rights, the court concludes that Townsend is entitled to summary judgment. It is undisputed that Townsend was not Barnes's health care provider and that she did not evaluate or treat him at any time during his period of incarceration at WRSP. See Pl.'s Br. Opp'n, ECF No. 43, at 3. Although Townsend received two informal complaints regarding Barnes's dissatisfaction with Dr. Mullins's treatment decisions, no reasonable jury could find that Townsend actually knew of and disregarded an excessive risk of harm. Jackson, 775 F.3d at 178. As Townsend noted in her response to the second informal complaint, Barnes had been regularly examined and treated by the facility physicians, and he had been referred for an outside consultative evaluation. Barnes does not dispute that Townsend lacked authority to direct Dr. Mullins or any other physician to provide particular medical treatment. Pl.'s Br. Opp'n at 4. While Barnes obviously disagrees with the treatment decisions made by Dr.

9

Mullins and Dr. Smith, including the types of medications prescribed, "such disagreements . . . fall short of showing deliberate indifference" on the part of Townsend. Jackson, 775 F.3d at 178; see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (noting that non-physicians cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

In response to the pending motion, Barnes emphasizes that "Townsend is the administrator of the facility medical department" and that Dr. Mullins "reports to her administratively." Pl.'s Br. in Opp'n at 7. The mere fact that Townsend serves as the Health Authority, however, does not provide a basis for liability under § 1983. See Revene v. Charles Cnty. Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989) (noting that "there is no vicarious liability under § 1983") (citing Vinnedge v. Gibbs, 550 F.2d 926, 928–29 (4th Cir. 1977)). Nor does the fact that facility physicians report to her for administrative purposes. Id. Under existing precedent, a supervisory official can only be held liable for the actions or inactions of a subordinate under certain "limited" circumstances. King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016). Specifically, to establish supervisory liability under § 1983, a plaintiff must show: (1) that the defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and the alleged constitutional injury. Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

Barnes has not presented evidence sufficient to create a genuine issue of material fact as to any of these elements. There is no evidence from which a reasonable jury could find that Townsend knew or should have known that Dr. Mullins, Dr. Smith, or any other medical provider was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury. Id. While Townsend may have an overarching duty to ensure that inmates have access to adequate medical care, this "does not relieve [Barnes] of the burden of showing a pervasive risk of harm that [Townsend] actually knew about, actively or constructively—a burden that [Barnes] has not met." Id. Additionally, Barnes has not pointed to any evidence from which a reasonable jury could find that Townsend tacitly authorized the denial of medical treatment or acted with deliberate indifference to a pervasive risk of harm. See Shaw, 13 F.3d at 799 (explaining that "[a] plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses" but may not do so by merely "pointing to a single incident or isolated incidents") (internal quotation marks and citation omitted). As indicated above, the facility physicians examined Barnes on multiple occasions, ordered x-rays, referred him to an outside specialist, and prescribed various medications for pain. His "disagreement with the course of treatment provided and his insistence that he should have received further treatment is not sufficient to show deliberate indifference" on the part of Townsend. McCoy v. Norwood, 818 F. App'x 380, 381 (5th Cir. 2020) (citing Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)); see also Jackson, 775 F.3d at 178. Accordingly, the court concludes that Townsend is entitled to summary judgment.

11

## IV.     Conclusion

For these reasons, Townsend's motion for summary judgment, ECF No. 35, is **GRANTED**. An appropriate order will be entered.

Entered: February 3, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.02.03 11:53:06
-05'00'

Michael F. Urbanski
Chief United States District Judge